This document was signed electronically on June 14, 2016, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: June 14, 2016



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re | ) |
| | ) Case No. 15-52657 |
| MARY J. BROWN, | ) |
| | ) Chapter 13 |
| Debtor. | ) |
| | ) Judge Alan M. Koschik |
| | ) |

**MEMORANDUM DECISION SUSTAINING IN PART, AND OVERRULING IN PART, DEBTOR'S OBJECTION TO CLAIM NUMBER 2 OF SANTANDER CONSUMER USA**

On November 5, 2015, the debtor, Mary J. Brown (the "Debtor"), filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq*. The next day, the Debtor filed her Motion to Value Collateral [docket #7] (the "Motion to Value") with respect to her secured car loan owed to Santander Consumer USA ("Santander"), wherein the Debtor sought to bifurcate Santander's claim as secured in the amount of $2,133.00 and unsecured in the amount of $7,512.00.

Subsequently, on December 7, 2015, Santander filed its Proof of Claim, which was filed as Claim No. 2 in this case. Santander's Proof of Claim sought the amount of $10,528.49, of which Santander claimed $4,650.00 was secured by the value of the underlying vehicle, and the remaining amount of $5,878.49 was unsecured. In addition, Santander claimed that the secured claim accrued interest at the contract rate of 13.75 percent.

On January 19, 2016, the Debtor filed her Objection to Santander's Proof of Claim [docket #19] (the "Objection") mirroring the proposed bifurcation stated in her original Motion to Value. Specifically, the Debtor sought a valuation of the collateral in the amount of $2,133.00 and requested that the secured claim of Santander be fixed in that amount. The Debtor further sought a reduction in the interest rate from 13.75 percent to 6.00 percent, arguing that the appropriate rate should be the prime rate of 3.25 percent plus a risk premium of 2.75 percent pursuant to the holding of *Till v. SCS Credit Corporation (In re Till),* 541 U.S. 465 (2004).[1] The Debtor further sought a ruling that the remaining balance of $8,395.49 be deemed unsecured and accrue no interest, and be treated identically to all other unsecured claims under the Debtor's Chapter 13 Plan.

The Debtor's proposed value of the collateral, and proposed secured claim amount, was based on "both Kelly Blue Book private party value and NADA values, obtained on October 12, 2015," which was less than a month before the Debtor's petition date. The Debtor noted that the vehicle had approximately 87,000 miles at the time of the bankruptcy filing, was in good operating condition, but with some cosmetic defects and delayed vehicle maintenance. The

---

[1] The Court notes that effective December 17, 2015, the prime rate increased from 3.25 percent to 3.50 percent. The increase predated the Objection to Claim, but postdated the petition date. The Debtor offered no argument as to which prime rate properly applies under *Till*, 541 U.S. 465 (2004). However, the Court is satisfied that the 6.00 percent rate reflects a satisfactory risk-adjusted interest rate, regardless of whether the risk premium is 2.50 percent or 2.75 percent over the respective applicable prime rate. This is particularly true as a result of Santander's default on both the Debtor's Motion to Value and her Objection to Santander's Claim.

Debtor did not, and has not, specified the nature of the cosmetic defects or delayed vehicle maintenance, nor has she given an estimate of the amount necessary to address those issues. The Debtor nevertheless contends that the car is not "showroom" ready.

The Court held a hearing on February 25, 2016 on the Debtor's Objection. At that hearing, the Debtor's counsel confirmed that the Motion to Value was moot as a result of Santander's Proof of Claim. With respect to the Objection, the Court requested further briefing regarding the appropriate standard for valuation of consumer vehicles pursuant to 11 U.S.C. § 506(b)(2), as well as additional evidence regarding the conclusions drawn by various valuation methods with respect to the value of the vehicle collateral.

The Debtor filed a Supplement to her Objection on March 3, 2016 (the "Supplement").

The valuation of motor vehicles depends on the record the Court is presented in a particular case. *In re Pearsall*, 411 B.R. 267, 270 (Bankr. N.D. Ohio 2010) (Judge Whipple). The replacement value required by the statute for valuation of personal property held by consumer debtors for personal, family, or household purposes should be calculated as of the petition date by adjusting, in case of motor vehicles, Kelly Blue Book or NADA guide retail values for a like vehicle. *In re Morales*, 387 B.R. 36 (Bankr. C.D. Cal. 2008). Various other authorities discuss the fact that the retail values cited by these sources for vehicle of similar age and condition may be adjusted by other considerations, or at least that such published retail values are used as a starting point. *See, e.g., In re Eddins*, 355 B.R. 849 (Bankr. W.D. Okla. 2006); *In re Brown*, 2006 WL 3692609 (Bankr. D.S.C. April 24, 2006).

However, while adjustments may be appropriate with respect to the condition of the vehicle, Section 506(b) specifically provides that the replacement value of the vehicle shall not be adjusted for cost of sale or marketing. 11 U.S.C. § 506(b). The Court interprets this statute as

3

limiting adjustments to those that pertain to the specific physical condition of the vehicle, including, but not limited to, age and mileage, and in particular that such adjustments are only permissible if they are supported by evidence provided to the Court. *See, e.g., Pearsall,* 441 B.R. at 271.

In her Supplement, the Debtor provides evidence of published trade-in values, clean retail values, and private party sale values. The Court concludes that, absent specific evidence justifying an alternative valuation method, the values of a private party sale or a trade-in are not consistent with the valuation methods Congress has chosen for valuing personal property for personal, family, or household purposes in Chapter 7 or 13 cases. *See* 11 U.S.C. § 506(b)(2). Congress could have provided a different standard, or it could have left stand the general rule applicable to such cases under 11 U.S.C. § 506(a)(1), pursuant to which a valuation is determined "in light of the purpose of the valuation." However, it did not.

Moreover, while the Debtor does provide that the vehicle at issue had 87,000 miles at the time of the petition, and was in "good condition," she provides no additional evidence or even description of what other deferred maintenance is required, or cosmetic repairs need to be completed in order to put the vehicle in, what she calls "showroom" condition. The Court observes that any and all vehicles have a value in whatever condition they find themselves. Moreover, in the context of an objection to claim, it is up to the Debtor to offer sufficient evidence to rebut the prima facie validity of the claim by, in this case, providing evidence of the adjustments necessary to demonstrate the appropriate value, taking into account "the age and condition of the" vehicle.

Referring to the valuation evidence actually provided to the Court by the Debtor, the most appropriate measure appears to be that contained in Exhibit C to the Debtor's Supplement,

in which she refers to the expected price that an individual would be required to pay to a dealer to find a replacement vehicle of similar type, age, and condition. That exhibit provides for a market range of $2,782.00 to $4,289.00, with a suggested retail price of $3,686.00, and a fair purchase price of $3,536.00. There is no evidence presented to suggest that the value of the vehicle at issue is at the low or high end of the market range. However, the Kelly Blue Book's "fair purchase price" is defined as follows: "This is the price people are typically paying a dealer for a used car with typical mileage in good condition or better. This price is based on actual used car transactions and adjusted regularly as market conditions change." With the absence of any additional evidence regarding the condition of the Debtor's vehicle, this definition appears to square precisely with the standard that has been established by Congress in Section 506(b)(2).

## CONCLUSION

Therefore, in light of the evidence presented by the Debtor, the authorities cited by the Debtor, the arguments of counsel at the February 25, 2016 hearing, and the fact that the creditor Santander filed no response to either the Motion to Value Collateral or the Objection to Claim filed by the Debtor, the Debtor's Objection to Claim [docket #19] must be sustained, in part, as to the reduction in the value of the collateral and the applicable interest rate.

The value of the Debtor's vehicle, which serves as collateral to Santander's loan, shall be fixed in the amount of $3,536.00 – the Kelly Blue Book "fair purchase price" for a vehicle of a similar type, age, mileage, and condition. The applicable interest rate on Santander's claim shall be fixed at 6.00 percent. In light of the foregoing, the Debtor's Motion to Value [docket #7] shall be denied as moot.

5

A separate order sustaining, in part, and overruling, in part, the Debtor's Objection to Claim, consistent with this Memorandum Decision, will be entered contemporaneously with this Memorandum Decision.

# # #